UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF MAINE

```
**************************************
MID-CONTINENT CASUALTY          *
COMPANY,                        *
                                *   CIVIL ACTION
              Plaintiff         *   No.:
                                *
       v.                       *
                                *
EARTH CARE PRODUCTS, INC.,      *
ANDREW LIVINGSTON,              *
NATHAN COLTRANE,                *
GENEVA WOOD FUELS, LLC, and     *
PATRIOT INSURANCE COMPANY,      *
                                *
              Defendants        *
**************************************
```

## COMPLAINT FOR DECLARATORY JUDGMENT

### Introduction

1.   This action is brought for a declaratory judgment providing that the plaintiff, Mid-Continent Casualty Company ("plaintiff" or "Mid-Continent") owes no duty to defend or obligation to indemnify or other coverage obligation under a general liability insurance policy issued by the plaintiff to Defendant Earth Care Products, Inc. ("Earth Care") with respect to an underlying action brought by the Defendant Geneva Wood Fuels, LLC ("Geneva") as alleged subrogee of the Defendant Patriot Insurance Company ("Patriot"), against Earth Care, Andrew Livingston ("Livingston"), and Nathan Coltrane ("Coltrane").  The underlying action arises out of an explosion on August 8, 2009 at Geneva's wood pellet plant in Strong, Maine allegedly caused by Earth Care's alleged design errors.  Geneva's first party insurer, Patriot, allegedly paid in excess of $7 million in coverage as a result of the explosion.

2.   By this action, the plaintiff, Mid-Continent seeks a declaratory judgment that as a result of a professional services exclusion, faulty work exclusion, damage to property exclusion, and/or other coverage defenses, it owes no duty to defend, obligation to indemnify or other coverage obligation to the defendants, Earth Care, Livingston, Coltrane, Geneva and/or Patriot with respect to any of the claims asserted in the aforesaid underlying action or the alleged explosion and damages that are the subject of the same.

<center>Parties</center>

3.   Plaintiff, Mid-Continent is a foreign insurance company with a principal place of business in Tulsa, Oklahoma.

4.   Defendant Earth Care is a corporation organized under the laws of the State of Kansas with a principal place of business in Independence, Kansas.  This action arises out of services performed by Earth Care for Defendant Geneva in the State of Maine.

5.   Defendant Livingston is an officer, director and employee of Earth Care and resides in Independence, Kansas.  Defendant Livingston is an engineer, and prior to the accident at issue had extensive experience designing and engineering wood pellet plants, and is the holder of multiple patents for inventions he had created.  This action arises out of services performed by Earth Care and Livingston in the State of Maine.

6.   Defendant Coltrane was at all times material an employee of Earth Care who resides in Independence, Kansas.  Defendant Coltrane is an engineer.  This action arises out of services performed by Earth Care and Coltrane in the State of Maine.

7.   Defendant Geneva is a Delaware corporation with a principal place of business in Strong, Maine.

8.   Defendant Patriot is an insurance company with a principal place of business in Yarmouth, Maine.

<div align="center">Jurisdiction and Venue</div>

9.   This court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) based upon diversity of citizenship and an amount in controversy exceeding seventy-five thousand ($75,000) dollars.

10.   This court has personal jurisdiction over each of the defendants.

11.   Venue is appropriate in this court pursuant to 28 U.S.C. §1391 in that at least one of the defendants has a principal place of business in Maine, the underlying claim arose in Maine, the underlying action is pending in Maine, and Maine is "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."  28 U.S.C. §1391(b)(2).

<div align="center">Facts</div>

<div align="center">a.  The Underlying Action</div>

12.   Defendant Geneva, as alleged subrogee of Patriot has filed the underlying action against defendants, Earth Care, Livingston, and Coltrane.  Geneva initially brought the underlying action on April 18, 2012, in the Maine Superior Court for Franklin County.  On June 15, 2012, Earth Care removed the underlying action to this court based upon diversity jurisdiction, where it is now pending as Civil Action No. 1:12-cv-00191-JAW.  A copy of the First Amended Complaint in the underlying action ("Underlying FAC") is attached hereto as "Exhibit A."

13.   Defendant Geneva alleges that on August 8, 2009, an "explosion" took place at defendant Geneva's plant in Maine.  Underlying FAC, ¶9.  Defendant Geneva alleges that

<div align="center">3</div>

Defendant Patriot "issued a policy of insurance" to Geneva and that "as a result of" the said explosion, "Patriot has paid over $7 million in insurance coverage." Id., ¶¶8-9. Defendant Geneva further alleges that "Patriot is properly subrogated to Geneva's interest pursuant to Maine law to the extent of its insurance payments of $7 million." Id., ¶10. Hence, the underlying action is a subrogation action brought in Geneva's name, but as to which Patriot is the real party in interest.

14.   Defendant Geneva alleges in the underlying action that defendants Earth Care, Livingston and Coltrane "designed, specified and supplied the equipment for the Geneva plant" i.e., a "drying system" and "hold themselves out and represent themselves as having expertise in the design, specification and construction of wood pellet plants." Id., ¶¶12-13, 20.

15.   Defendant Geneva, alleges in the underlying action that, "In designing, specifying, engineering, and constructing the drying system, the applicable standard of care required that the Defendants [Earth Care, Livingston and Coltrane] seek to avoid potential sources of ignition in the process by installing safety systems or designing the drying system to avoid sources of ignition from coming in contact with combustible dry fines or dust." Id., ¶21.

16.   Defendant Geneva alleges in the underlying action that "as design, engineering and construction professionals," defendants Earth Care, Livingston and Coltrane "knew, should have known and/or should have recognized that:

    a.    The Burner [of the drying system] would emit sparks and burning embers that would travel downstream and pass into the Dryer [of the drying system].

    b.    The burning embers and sparks from the Burner could ignite any dry fines or dust entering the Cycloclean Burner air intake horn and the Dryer, which could create a danger of fire or explosion.

    c.    Dry fines and dust would pass through the 15-inch horizontal line and be introduced downstream from the Burner and upstream of V-Blades in the area of air intake horn.

d.  The area between the Burner and V-Blades leading into the Dryer would be area [sic] with the highest temperatures and highest concentration of burning embers and sparks.

e.  Any potential sources of ignition should be segregated, protected or excluded from areas in which dry dust or fines would be expected to be present or accumulate.

f.  The dry fines and dust traveling through the 15-inch horizontal line and passing into the area upstream of the V-Blades would pose a risk of fire and explosion due to ignition by hot gases, embers and spark being emitted from the Burner.

g.  The increase in dry fines and dust passing through the 15-inch horizontal line increased the risk of fire and explosion in the area immediately downstream of the Burner.

h.  The Defendants easily could have designed, engineered and specified the plant systems to have the dry fines and dust be recycled into the system downstream of the Dryer to avoid the risk of fire and explosion.

i.  Whether the 15-inch horizontal pipe was located upstream or downstream of the dryer did not make any difference in the operation of the drying process.

j.  The 4-inch line from the dry fines bin and abort line could have been located downstream of the Dryer.

k.  The purpose of the 4-inch abort line is to send dry fines and dust directly into the Dryer airlock if there are problems with the dry fines bin (also referred to as the wood meal surge bin).

l.  Introducing dry fines and dust downstream of the Dryer would have segregated the dry fines and dust from burning embers, sparks and hot gases, which would significantly reduce or eliminate the risk of fire or explosion.

m.  The introduction of green wood into the Dryer is the only means to prevent an explosion of dry fines as the plant as designed, engineered, specified and constructed by the Defendants [Earth Care, Livingston and Coltrane] was inadequate and posed a risk of fire and explosion.

n.  Introducing dry fines and dust downstream of the Dryer would have been a safer procedure.

o.  The more dry fines and dust introduced upstream of the Dryer, the greater the risk of fire and explosion in the Dryer.

p.  If dry fines or dust was introduced directly in the end of the Dryer Drum when the Drum is not running and the Dryer was turned on, the Dryer Drum would probably explode." Id., ¶21.

5

17.     Defendant Geneva alleges in the underlying action that defendants Earth Care, Livingston and Coltrane "designed the air intake horn above the Burner to allow ambient air to be inducted into the Dryer by the Dryer fan."  Id., ¶22.

18.     Defendant Geneva alleges in the underlying action that as "design, engineering and construction professionals," defendants Earth Care, Livingston and Coltrane "knew, should have known, and/or should have recognized that:

a.      If the air intake horn was emitting dust that would indicate that the system designed, engineered, specified and constructed by Earth Care was not operating properly;

b.      An excessive amount of dry fines and/or dust was being emitted from the Geneva plant.

c.      The emission of dry fines and dust from the intake horn during normal operation indicated there was a large amount of dry fines and dust traveling through the 15-inch horizontal line.

d.      The emission of dust from the V-blade damper air intake indicated a failure in the system designed, engineered, specified, and constructed by Geneva.

e.      Earth Care's decision to cover up the V-blade damper air intakes with sheet metal to prevent the dust emission, but [this] resulted in the emitted dust going into the Dryer.  [sic]  Id., ¶24.

19.     Defendant Geneva, alleges in the underlying action that defendants, Earth Care, Livingston and Coltrane "designed, engineered and installed the spark detection, suppression and immersion system in the plant." Id., ¶27.

20.     Defendant Geneva alleges in the underlying action that, "the explosion was caused by the ignition of accumulated dust in the Dryer by burning embers or sparks emitted from the Burner" and that the "explosion occurred in the dryer due to a build-up of dry fines and the ignition of those fines by a spark from the furnace."  Id., ¶¶26, 28.

21.     Defendant Geneva alleges in the underlying action that, "the dry fines that caused the explosion were introduced into the system up-stream from the Dryer through the 15-inch

horizontal pipe and the 5 inch vertical pipe," and that, "the lack of any spark detection, suppression or immersion systems upstream from the Dryer allowed the ignition of the dry fines by a spark from the Burner."  Id, ¶¶29-30.

22.    Defendant Geneva alleges in the underlying action that, defendants, Earth Care, Livingston, and Coltrane's "design, specification and supply of materials for the plant violated the applicable standard of care for professionals in the industry," and that they "failed to use such skill, judgment, prudence, and preparation as is reasonable for an ordinary, competent engineer or designer would use [sic] under like circumstances."  Id., ¶¶33-34.  Geneva further alleges that the underlying defendants' "failure to consult, know or understand the NFPA [National Fire Protection Association] standards violated the applicable standard of care" and that, "the failure to calculate or investigate the risk of fire and explosion posed by the introduction of dry fines and dust immediately upstream of the Burner violated the applicable standard of care."  Id., ¶¶36-37.  Defendant Geneva further alleges that, "The failure to separate and segregate the combustible dry fines or dust from coming in contact with burning embers and sparks (sources of ignition) emitted by the Burner upstream of the violated [sic] the applicable standard of care set forth in NFPA . . ."  Id., ¶38.

23.    Defendant Geneva alleges in the underlying action that, "the introduction of green wood into the Dryer was an inadequate method of spark suppression and violated the applicable standard of care set forth in [the] NFPA" and that defendants, Earth Care, Livingston and Coltrane's "design, engineering, specification and construction of the plant systems so that if dry fines were introduced in the end of the Dryer Drum when the Drum is not running and the Dryer was turned on, the Dryer Drum would probably explode violated the applicable standard of care set forth in [the] NFPA . . ."  Id., ¶¶39-40.

24.     Defendant Geneva alleges in the underlying action that defendants, Earth Care, Livingston and Coltrane "knew that the dry fines bin had been removed from the system," that the said defendants' "warning that removal of the dry fines bin might result in blue haze or fire was insufficient and violated the applicable standard of care," and that the said defendants "did not have a sound reason to install the abort line to allow introduction of dry fines and dust directly into the Dryer airlock." Id., ¶¶42-44.  Geneva further alleges that the said defendants "failure to consider the dangers in installing the 4-inch abort line in this unique manner without consulting any codes or performing any analysis violated the applicable standard of care." Id., ¶45.

25.     Defendant Geneva alleges in the underlying action that, "as a result of" defendants, Earth Care, Livingston and Coltrane's "violation of the applicable standards of care and negligence, dry fines and dust in the dryer was ignited, which caused [the] explosion severely damaging the Geneva plant" and that "as a result" of the said defendants' "negligence," Geneva "suffered losses, including but not limited to property damage, business interruption losses, economic losses, lost profits, and future lost income." Id., ¶¶47-48.

26.     Defendant Geneva alleges in the underlying action that defendants, Earth Care, Livingston and Coltrane "engaged in . . . the design, specification, and construction of [a] wood pellet plant without an adequate dust control system, spark detection, suppression or immersion system to avoid plant explosion." Id., ¶55.

27.     Defendant Geneva alleges in the underlying action that, "Earth Care designed and/or specified the equipment to be purchased by Geneva as part of Earth Care's design, specification and engineering of the plant's systems." Id., ¶64.

28.   Defendant Geneva alleges in the underlying action that, "at all times relevant, Earth Care subcontracted with" another entity "for construction of the plant based upon Earth Care's design and specification."  Id., ¶65.

29.   Defendant Geneva alleges in the underlying action that, "Earth Care breached its written contract . . . and related oral contracts by failing to design, specify and construct a safe plant in conformity with the applicable standard of care and state of the art in the industry and by designing a plant that was likely to, and did explode."  Id., ¶66.

30.   Defendant Geneva alleges in the underlying action that, "Earth Care breached its express and implied warranties by failing to design, specify and construct a safe plant in conformity with the applicable standard of care and state of the art in the industry and by designing a plant that was likely to, and did explode."  Id., ¶71.

31.   Thus, Defendant Geneva alleges in the underlying action that the entire Geneva plant was the defendants, Earth Care, Livingston and Coltrane's work and/or product.

32.   The Defendant Geneva's First Amended Complaint in the underlying action alleges Counts of "Negligence" (Count I); "Negligent Failure To Warn" (Count II); "Strict Liability" (Count III); "Breach of Contract" (Count IV); and "Breach Of Implied And Express Warranties" (Count V).

      b.   Earth Care's Work And The Actual Basis Of The Underlying Claims

33.   On or about February 20, 2008, Geneva, Earth Care and Pellet Systems International, Inc. ("PSI") entered into a Hold Harmless Agreement.  The said agreement recited that Geneva had entered into contractual agreements with PSI "to engineer, procure, and construct a wood pelleting plant in Strong, Maine" and that PSI had "requested quotations for equipment supply from [Earth Care] for wood drying and wood burning for the pellet plant," and

that Geneva had "requested an overview meeting among the three parties asking [Earth Care] to offer its best solutions addressing issues in previous design and equipment proposed for drying."

34.   On May 23, 2008, PSI entered into a contract with Geneva entitled, "Turnkey Equipment Supply and Installation Agreement" relative to the subject project, which was identified as "A nominal guaranteed, 15 Tonne Per Hour Pellet Manufacturing Plant" in Strong, Maine. Pursuant to the agreement, PSI agreed to provide services, including "Project Management, Engineering, Procurement and Installation" of the plant.

35.   On May 30, 2008, Earth Care entered into a contract with PSI under which Earth Care agreed to furnish PSI "machinery and equipment in accordance with the specifications, terms and conditions outlined . . . for the project referenced as **Wood Pellet Plant, Geneva.**" The contract identified forty-four pieces of equipment or services to be provided by Earth Care.

36.   Earth Care was initially retained to perform the engineering services for the "front end" of Geneva's wood pellet plant in Strong, Maine, i.e., to design, engineer and specify the milling, drying and wood burning portion of the plant. Earth Care initially contracted with PSI for this work.  PSI at that time was initially responsible for the entire system and the entire plant.

37.   In August 2008, Geneva, Earth Care and PSI entered into an "Assignment Agreement."  The agreement provides that PSI "is contracted to Geneva . . . for a turn-key wood pelleting system on [Geneva's] site and building in Strong, Maine" and Earth Care "is subcontracted by PSI to provide [Earth Care's] turn-key and drying system . . ."  The agreement provides that Geneva requested that PSI assign Earth Care's agreement directly to Geneva.

38.   Ultimately, PSI ceased work on the project. After PSI left the project, Earth Care was retained by Geneva to also perform the design of the "back end" of the plant, i.e., the pelleting, fines and dust collection systems, such that Earth Care was retained to provide all

design and engineering services for the plant. Earth Care's plans and drawings also specified the materials and equipment that were to be installed at the plant. Earth Care also supplied certain materials and equipment through subcontractors and vendors in connection with its design. Earth Care subcontracted out the actual construction and installation work to subcontractors.

39.    This court has found that "the gravamen of [Geneva's] Complaint [in the underlying action] focuses on Earth Care's overall design of the plant and its failure to provide a dust control system."  See "Order On Defendant Earth Care's Motion To Dismiss Or To Transfer And To Stay Discovery And On Plaintiff Geneva's Unopposed Motion To Extend Discovery Deadlines" (Woodcock, Jr., J.) entered in the underlying action on December 6, 2012, p. 12, n. 3.

40.    The discovery conducted in the underlying action establishes that the actual basis of Geneva's claims in the underlying action are alleged design errors by defendants, Earth Care, Livingston and Coltrane.

### c.  The Subject Policy

41.    Mid-Continent issued the subject commercial general liability insurance policy as Policy No. 04-GL-000762623 to "Earth Care Products Inc." as the Named Insured, with an applicable policy period of 7/13/09 to 7/13/10.  A complete copy of the subject policy is attached hereto as "Exhibit B."

42.    The subject policy provides certain general liability insurance coverage in accordance with its terms, conditions, coverages, exclusions, and limits.  The policy limits for the subject policy are $1 million per occurrence subject to a $2 million general aggregate limit (for other than products and completed operations) and a $2 million aggregate limits for products and completed operations.

43.    The main insuring agreement for the subject policy is Endorsement CG 00 01 12 07

("**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**"). " **SECTION I –**

**COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

**LIABILITY**" of the said Endorsement provides as follows:

      **1.  Insuring Agreement**

      **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will    have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply . . .

      **b.**    This insurance applies to 'bodily injury' and 'property damage' only if:

        **(1)** The 'bodily injury' or 'property damage' is caused by an 'occurrence' . . .

44.    "**SECTION V – DEFINITIONS**" of Endorsement CG 00 01 12 07 defines

"Occurrence" as follows:  "**13.** 'Occurrence' means an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."

45.    "**SECTION V – DEFINITIONS**" of Endorsement CG 00 01 12 07 defines

"Bodily injury" as follows:  "**3.** 'Bodily injury' means bodily injury, sickness or disease

sustained by a person, including death resulting from any of these at any time."  The underlying

action brought by Defendant Geneva does not allege that Geneva and/or Patriot sustained any

"damages because of 'bodily injury'" within the meaning of the subject policy.

46.    "**SECTION V – DEFINITIONS**" of Endorsement CG00 01 12 07 defines

"Property damage" as follows:  '**17.**  Property damage' means:

      **a.**    Physical injury to tangible property, including all resulting loss     of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.  For the purpose of this insurance, electronic data is not tangible property.

        As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

47.   "**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**" of Endorsement CG 00 01 12 07, provides as follows:

    **1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.  We will have the right and duty  to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply . . .

    **b.**    This insurance applies to 'personal and advertising injury' caused by an offense arising out policy period.

48.   "**SECTION V – DEFINITIONS**" of the said Endorsement CG 00 01 12 07 defines "Personal and advertising injury" as follows:

    **14.**    'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      **e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

      **f.**  The use of another's advertising idea in your 'advertisement'; or

      **g.**  Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

49.   The underlying action brought by Geneva does not allege that Geneva and/or Patriot sustained any "damages because of 'personal and advertising injury'" within the meaning of the subject policy, such that Coverage B of the subject policy does not apply to the claims asserted in the underlying action.

50.   Endorsement CG 00 01 12 07 includes the following Contractual Liability Exclusion:

      **2.**  This insurance does not apply to:

      **b.**  **Contractual Liability**

      'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      **(1)**  That the insured would have in the absence of the contract or agreement; or

      **(2)**  Assumed in a contract or agreement that is an insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement . . .

51.   Endorsement CG 00 01 12 07 includes the following Damage To Property Exclusion:

      **2.**  This insurance does not apply to:

      **j.**  **Damage To Property**

      'Property damage' to:

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

\* \* \*

Paragraphs . . . **(5)** [and] **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'."

52.   "**SECTION V – DEFINITIONS**" of Endorsement CG 00 01 12 07 defines "Your work" as follows:

**22.** 'Your work':

**a.**  Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.**  Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

**(2)** The providing of or failure to provide warnings or instructions.

53.   "**SECTION V – DEFINITIONS**" of Endorsement CG 00 01 12 07 defines

"Products-completed operations hazard" as follows:

> **16.**  'Products-completed operation hazard':
>
> **a.**  Includes all 'bodily injury' and 'property damage'
> occurring away from premises you own or rent and
> arising out of 'your product' or 'your work' except:
>
> **(1)**  Products that are still in your physical possession;
> or
>
> **(2)**  Work that has not yet been completed or abandoned.
> However, 'your work' will be deemed completed at the
> earliest of the following times:
>
> **(a)**  When all of the work called for in your contract has
> been completed.
>
> **(b)**  When all of the work to be done at the job site has been
> completed if your contract calls for work at more than one
> job site.
>
> **(c)**  When that part of the work done at a job site has been
> put to its intended use by any person or organization other
> than another contractor or subcontractor working on the same
> project.
>
> Work that may need service, maintenance, correction, repair
> or replacement, but which is otherwise complete, will be
> treated as completed.
>
> **b.**  Does not include 'bodily injury' or 'property damage'
> arising out of:
>
> **(1)**  The transportation of property, unless the injury or damage
> arises out of a condition in or on a vehicle not owned or operated
> by you, and that condition was created by the 'loading or
> unloading' of that vehicle by any insured.
>
> **(2)**  The existence of tools, uninstalled equipment or
> abandoned or unused materials; or
>
> **(3)**  Products or operations for which the classification,

listed in the Declarations or in a policy schedule, states
that products-completed operations are subject to the
General Aggregate Limit.

54.   Endorsement CG 00 01 12 07 includes the following Damage To Your Product

Exclusion:

**2.**   This insurance does not apply to:

**k.   Damage To Your Product**

'Property damage' to 'your product' arising out of it or any
part of it.

55.   "**SECTION V – DEFINITIONS**" of Endorsement CG 00 01 12 07 defines "Your

product" as follows:

**21.**   'Your product':

**a.**   Means:

**(1)**   Any goods or products, other than real property,
manufactured, sold, handled, distributed or disposed of by:

**(a)**   You;

**(b)**   Others trading under your name; or

**(c)**   A person or organization whose business or assets
you have acquired; and

**b.**   Includes:

**(1)** Warranties or representations made at any time
with respect to the fitness, quality, durability,
performance or use of 'your product'; and

**(2)**   The providing of or failure to provide warnings
or instructions.

**c.**   Does not include vending machines or other
property rented to or located for the use of others
but not sold.

56.   The subject policy includes the following Damage To Your Work Exclusion as

Endorsement CG 22 94 10 01:

> **THIS ENDORSEMENT CHANGES THE POLICY.**
> **PLEASE READ IT CAREFULLY.**
>
> **EXCLUSION - DAMAGE TO WORK PERFORMED BY**
> **SUBCONTRACTORS ON YOUR BEHALF**
>
> This endorsement modifies insurance provided under the
> following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion **l.** of **Section I – Coverage A – Bodily Injury And**
> **Property Damage Liability** is replaced by the following:
>
> **2.   Exclusions**
>
> This insurance does not apply to:
>
> **l.   Damage To Your Work**
>
> 'Property damage' to 'your work' arising out of it or any
> part of it and included in the 'products-completed operations
> hazard'.

57.   The subject policy includes the following professional services exclusion as En

> **THIS ENDORSEMENT CHANGES THE POLICY.**
> **PLEASE READ IT CAREFULLY.**
>
> **EXCLUSION – ENGINEERS, ARCHITECTS OR**
> **SURVEYORS PROFESSIONAL LIABILITY**
>
> This endorsement modifies insurance provided under the
> following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> The following exclusion is added to Paragraph **2., Exclusions**
> **of Section I – Coverage A – Bodily Injury And Property**
> **Damage Liability** and Paragraph **2., Exclusions of Section I –**

**Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of the rendering of or failure to render any professional services by you or by any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

**1.**  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**2.**  Supervisory, inspection, architectural or engineering activities.

<div align="center">d. <u>Actual Controversy</u></div>

58.   Mid-Continent is defending Earth Care, Livingston and Coltrane against the underlying action under a reservation of rights.

59.   Mid-Continent contends that it owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot with respect to the underlying action or the explosion and alleged damages that are the subject of same.

60.   An actual controversy has arisen between Mid-Continent, on the one hand, and Earth Care, Livingston, Coltrane, Geneva and Patriot, on the other hand, as to whether any coverage is afforded under the aforesaid subject policy issued by Mid-Continent for the claims asserted in the underlying action or for the explosion and alleged damages that are the subject of said underlying action, and as to the rights, duties, obligations, and status of the parties with respect to the said subject general liability policy, the underlying action, and the explosion and alleged damages that are the subject of the underlying action.

<u>Count I</u>

<u>Declaratory Judgment</u>

61.    Mid-Continent repeats the allegations contained in paragraphs 1-60 of this Complaint and incorporates same herein.

62.    Mid-Continent is entitled to a declaratory judgment providing that as a result of the professional services exclusion entitled, "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

63.    Mid-Continent is entitled to a declaratory judgment providing that as a result of the Damage To Your Work Exclusion included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

64.    Mid-Continent is entitled to a declaratory judgment providing that as a result of Paragraphs (5) and/or (6) of the Damage To Property Exclusion included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

65.     Mid-Continent is entitled to a declaratory judgment providing that as a result of the Damage To Your Product Exclusion included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

66.     Mid-Continent is entitled to a declaratory judgment providing that it owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same with respect to the underlying claims for business interruption, lost profits, lost income, and/or economic loss, on the grounds that said claims are not claims for "property damage" within the meaning of the subject policy.  Mid-Continent is further entitled to a declaratory judgment providing that it owes no duty to defend, obligation  to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the other claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent the claims in the underlying action and/or damages sought are not claims for "property damage" within the meaning of the subject policy.

67.     Mid-Continent is entitled to a declaratory judgment providing that it owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent the claims in the underlying action and/or damages sought are not based upon an "occurrence" within the meaning of the subject policy.

21

68.    Mid-Continent is entitled to a declaratory judgment providing that it owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent the claims in the underlying action and/or damages sought are within the scope of the Contractual Liability Exclusion included in the subject policy.

69.    Mid-Continent is entitled to a declaratory judgment providing that it owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent coverage is precluded by any of the terms, conditions, coverages, exclusions, or the limits of the subject policy.

<div align="center">Prayers For Relief</div>

WHEREFORE, Mid-Continent respectfully requests that this Court:

1.    Enter a declaratory judgment providing that as a result of the professional services exclusion entitled, "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" included in the subject policy, Mid-Continent  owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

2.    Enter a declaratory judgment providing that as a result of the Damage To Your Work Exclusion included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot

<div align="center">22</div>

under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

3.   Enter a declaratory judgment providing that as a result of Paragraphs (5) and/or (6) of the Damage To Property Exclusion included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

4.   Enter a declaratory judgment providing that as a result of the Damage To Your Product Exclusion included in the subject policy, Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same.

5.   Enter a declaratory judgment providing that Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same with respect to the underlying claims for business interruption, lost profits, and/or economic loss, on the grounds that said claims are not claims for "property damage" within the meaning of the subject policy.

6.   Enter a declaratory judgment providing that Mid-Continent owes no duty to defend, obligation  to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the other claims asserted in the underlying action or the explosion or damages that are the subject of same,

23

to the extent the claims in the underlying action and/or damages sought are not claims for "property damage" within the meaning of the subject policy.

7.   Enter a declaratory judgment providing that Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent the claims in the underlying action and/or damages sought are not based upon an "occurrence" within the meaning of the subject policy.

8.   Enter a declaratory judgment providing that Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent the claims in the underlying action and/or damages sought are within the scope of the Contractual Liability Exclusion included in the subject policy.

9.   Enter a declaratory judgment providing that Mid-Continent owes no duty to defend, obligation to indemnify or other coverage obligation to Earth Care, Livingston, Coltrane, Geneva, or Patriot under the subject general liability policy with respect to any of the claims asserted in the underlying action or the explosion or damages that are the subject of same, to the extent coverage is precluded by any of the terms, conditions, coverages, exclusions, or the limits of the subject policy.

10.   Award Mid-Continent its costs, expenses, and attorney's fees incurred in connection with this action; and

11.   Award Great American such other and further relief as this Court deems appropriate.

<div style="margin-left: 40%;">

Plaintiff,

MID-CONTINENT CASUALTY
COMPANY,

By its attorneys,

/s/ James B. Haddow
James B. Haddow, Bar No. 3340
Petruccelli, Martin & Haddow, LLP
Two Monument Square, Suite 900
Portland, Maine 04101
(207) 775-0200

</div>

Dated:   April 24, 2015

Of Counsel:

Michael D. Chefitz, Esquire
Bonner Kiernan Trebach & Crociata LLP
200 Portland Street, Suite 400
Boston, Massachusetts 02114
(617) 426-3900
(617) 426-0380 (telecopier)
mchefitz@bonnerkiernan.com